## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| **DONOVAN HALL**, **AND ROGER REUBEN, JR.** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action File No. _____ |
| | ) | |
| **SERGEANT DAN MCGHEE**, in his individual capacity, **CHARLES DIX**, in his individual capacity, **RAY HUNT**, in his individual capacity, **AARON JACKSON**, in his individual capacity, **JOHN DOES 1-4**, in their individual capacities as deputies of the DeKalb County Sheriff's Office. | ) ) ) ) ) ) ) ) ) ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT FOR DAMAGES</u>

**COME NOW**, Plaintiffs **Donovan Hall and Roger Reuben, Jr.** (hereinafter collectively as "Plaintiffs") and hereby file their Complaint for damages against **Defendants Sergeant Dan McGhee, Deputy Sheriff Charles Dix, Deputy Sheriff Ray Hunt, Deputy Sheriff Aaron Jackson, and John Does 1-4** (hereinafter collectively "Defendants"), showing this Honorable Court the following:

## NATURE OF THE ACTION

1.

This is a 42 U.S.C. § 1983 civil action brought under the Fourth and Fourteenth Amendments to the United States Constitution arising from the Defendants' use of excessive force against Plaintiffs. Plaintiffs also assert state law claims of false imprisonment, negligence, assault and battery, and violation of the Georgia Constitution. Plaintiffs demand a jury trial and seek an award of economic, compensatory and punitive damages, as well as an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

2.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988, as well as the Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §1331, §1343, and the aforementioned constitutional and statutory provisions. Plaintiffs further invoke the pendant or supplemental jurisdiction of this Court to decide claims arising under state law pursuant to 28 U.S.C. §1367.

3.

Venue is proper in this Court pursuant to 28 U.S.C. §139l(b) and N.D.L.R. 3.1B(3) because the event giving rise to this claim occurred in

DeKalb County, Georgia, which is situated within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia.

4.

All of the parties herein are subject to the jurisdiction of this Court.

**PARTIES**

5.

Plaintiffs are citizens of the United States and residents of DeKalb County, Georgia.

6.

Defendant Sergeant Dan McGhee ("Defendant McGhee") is an individual who at all times relevant herein, employed by DeKalb County who acted within his scope of his employment by and pursuant to the policies and procedures of the DeKalb County Sheriff's Department.

7.

Defendant Deputy Sheriff Charles Dix ("Defendant Dix") is an individual who at all times relevant herein, employed by DeKalb County who acted within his scope of his employment by and pursuant to the policies and procedures of the DeKalb County Sheriff's Department.

8.

Defendant Deputy Sheriff Ray Hunt ("Defendant Hunt") is an individual who at all times relevant herein, employed by DeKalb County who acted within his scope of his employment by and pursuant to the policies and procedures of the DeKalb County Sheriff's Department.

9.

Defendant Deputy Sheriff Aaron Jackson ("Defendant Jackson") is an individual who at all times relevant herein, employed by DeKalb County who acted within his scope of his employment by and pursuant to the policies and procedures of the DeKalb County Sheriff's Department.

10.

Defendant John Does 1-4 are individuals who were at all times relevant herein, employed by DeKalb County who acted within their scope of their employment by and pursuant to the policies and procedures of the DeKalb County Sheriff's Department.

11.

At all times relevant herein, Defendants acted under color of state law and on behalf of DeKalb County, Georgia.

## FACTUAL ALLEGATIONS

12.

Plaintiff Hall, 25 years old, is a high school graduate with high honors and a current student at Norfolk State University pursuing a Bachelor of Arts degree in Business Marketing. He is a former employee at Kelly Services as a technology support representative for Apple, Inc. Plaintiff Hall worked full time while on leave from college to help financially support his family.

13.

Plaintiff Reuben, 22 years old, is a high school graduate, a current student at the Art Institute of Atlanta pursuing a degree in Music Production. He is a former full-time employee at The Marriot Marquis located in Atlanta, Georgia. Plaintiff Reuben worked full-time while pursuing his college degree to help support his family.

14.

On July 26, 2013, Defendants Williams and Jackson arrived at Plaintiffs' residence at approximately 1:00 a.m. to serve a civil arrest warrant for Ms. Natania Griffin, mother of Plaintiffs.

15.

Defendants did not have a search warrant for the Plaintiffs' residence.

16.

Plaintiffs were abruptly awakened out of their sleep by banging on their front door by Defendants William and Jackson.

17.

Eventually all Defendants arrived at the scene, surrounding the house and shining bright lights into the windows of each room in a manner consistent with a military raid.

18.

Startled by the aggressive nature of Defendants' actions, Plaintiff Hall stepped out of his room and proceeded to the top of the staircase with Ms. Griffin.

19.

From the top of the staircase, Plaintiff Hall asked "Who is it, what's going on, why are you here?"

20.

Without showing Plaintiffs or Ms. Griffin any documentation or arrest warrant, one of the Defendants shouted from outside, "it's DeKalb County Sheriff, open the God damn door."

21.

Plaintiff Hall again asked, "Why y'all are here?"

22.

Defendants refused to state why they were there despite repeated requests by Plaintiffs. One of Defendant John Does stated, "We don't have to tell you shit."

23.

Plaintiff Hall and Ms. Natania Griffin proceeded downstairs to their foyer and asked Defendants to state what address they were looking for to verify if they were at the correct address.

24.

From outside the house, one of the defendants told Plaintiffs that they were trying to execute a warrant for 4463 Carissa Court, which of course was not Plaintiffs' address.

25.

Plaintiff Hall shouted from inside the residence, "Please stop, you are at the wrong house."

26.

Plaintiffs repeatedly requested a reason for the Defendants being at their home. Defendants refused to answer Plaintiffs and repeatedly shouted the incorrect address.

27.

Some of the Defendants then drove SUVs onto Plaintiffs' front lawn and pointed the vehicles towards the residence to shine their headlights directly into the windows, making it difficult for Plaintiffs to see.

28.

Defendants banged and kicked the front door.

29.

The aggressive behavior of the Defendants placed Plaintiff Hall in fear for his life which prompted him to retrieve his cell phone and Nikon camera to begin recording Defendants' behavior. He was terrified by Defendants' hostile and aggressive manner.

30.

Plaintiff Hall called 911 at 1:40 a.m. requesting them to send a sergeant to his family's home.

31.

He explained that his family was extremely scared because Defendants had guns drawn and pointed into the home.

32.

The 911 operator recorded that "Mr. Donovan…advised he is afraid to open the door…the officers are being aggressive, and they are at the wrong address."

33.

A police officer never came to the residence in response to Plaintiff Hall's call for help.

34.

Plaintiff Hall and Ms. Griffin cautiously approached the door and begged Defendants through the front door to please stop being hostile because they were terrified.

35.

Defendants continually threatened, verbally assaulting, and terrorizing Ms. Griffin and Plaintiffs that if they did not open the door they would break the door down.

36.

Ms. Griffin asked Defendants who they were looking for because they had the wrong address.

37.

One Defendant responded by screaming, "You bitch," while pointing through the window to Ms. Griffin.

38.

One Defendant threatened to take Ms. Griffin's daughter to the Department of Family and Children Services ("DFCS").

39.

Ms. Griffin's minor daughter was in the upstairs of the residence asleep.

40.

In extreme fear, Plaintiff Hall opened the door in an effort to cooperate with Defendants to prevent any potential harm to himself or his family.

41.

Upon opening the door, Plaintiff Hall requested Defendants to, "please stop… you all are on camera."

42.

Ms. Griffin was terrified, began to cry as she plead with the deputies to stop being hostile because she has not done anything wrong.

43.

Plaintiff Hall tried to calm her down by stating, "mommy please calm down, have faith in God—this is when you need it the most."

44.

As Ms. Griffin attempted to step outside—Defendant Dix and several other Defendants forcibly grabbed her and slammed her face first into the brick column located on the porch of the home.

45.

Defendants placed her hands behind her back in handcuffs, lifted her up from the ground, and dragged her to their vehicle without her feet ever touching the ground. Plaintiffs witnessed the entire ordeal.

46.

Ms. Griffin was unarmed and did not resist arrest.

47.

Despite having safely arrested Ms. Griffin, several Defendants, including Jackson, McGhee, and Dix, rushed inside the residence and screamed to Plaintiffs, "get down on the ground now!"

48.

One Defendant violently and without provocation struck Plaintiff Hall in the face with his hand gun.

49.

The force of the blow knocked Hall to the ground in the living room near the fireplace.

50.

Another Defendant twisted Plaintiff Hall's camera out of his hand in an effort to stop the recording of the excessive force being used against him.

51.

The manner, method and use of force at issue were unwarranted, unsafe and objectively unreasonable under the totality of the circumstances then existing.

52.

While handcuffing Plaintiff Hall, some of the defendants continued to kick and punch him.

53.

Plaintiff Reuben witnessed the attack on his brother from the kitchen area.

54.

Defendants forcibly handcuffed Plaintiff Reuben in the kitchen.

55.

Defendant McGhee yelled, "put cuffs on his big ass! You goin' open the door when I tell you to the open the door!"

56.

At least five Defendants participated in the attack of Plaintiff Hall when they handcuffed him in a hog tie manner and Defendant Jackson shouted, "put yo hands behind yo back! Right now! Imma tase the shit out of your ass!"

57.

Two Defendants grabbed each arm, another put his knee with all his body weight into Plaintiff Hall's back and neck, another Defendant pulled both legs up

to his back.

58.

As multiple defendants were pushing on Plaintiff Reuben, he plead with them to let him up from the ground because he "could not breathe."

59.

Plaintiff Reuben began to hyperventilate, wheezing, and gasping for air.

60.

Plaintiff Reuben has a history of asthma and a prior hospitalization in the intensive care unit for his condition.

61.

Plaintiff Reuben repeated to Defendants, "I can't breathe!"

62.

Plaintiff Hall witnessed the attack of his brother from the living room and screamed to Plaintiff Reuben, "just please stay calm, stay calm, stay calm."

63.

Defendants did not have arrest warrants for Plaintiffs.

64.

Defendant Jackson pointed his taser at Plaintiffs' faces, screaming and repeatedly threatened to tase them if they continued to speak.

65.

Some of the defendants forcibly grabbed Plaintiffs, handcuffed, and threw them on the couch.

66.

For over an hour and half after arresting Ms. Griffin, Defendants insulted, spat on, repeatedly threatened to tase and bullied Plaintiffs while they sat defenseless on the couch without the ability to freely leave.

67.

At least five Defendants surrounded Plaintiffs on the couch and repeatedly threatened them.

68.

Plaintiff Hall sat reciting the Lord 's Prayer.

69.

Hearing Plaintiff Hall's prayers, one Defendant sais, "Shut up! Say something else and you been sitting up here playing fucking games!"

70.

Some of the defendants pushed each of the plaintiffs in the side of their head (temple area).

71.

Defendant McGhee stated, "I will cane you."

72.

Plaintiff Hall told the deputies that he was in college. In response, Deputy Dix stated, "shit—well why don't you act like it then."

73.

Plaintiff Hall told Plaintiff Reuben not to say anything else since he believed the deputies were antagonizing them to get a reaction to justify arresting them.

74.

Defendants continually berated Plaintiffs for not opening the door when they first came to the residence. One Defendant went on further to state, "yall might be scared of the police because when the police ask you to do something—you don't do it.  When the police tell you to do something—you don't do it.  When the police make you do something—then you have an attitude problem and then you don't like the police…just continue to be an asshole."

75.

One Defendant went on to berate Plaintiffs, telling them that they were acting like "two year olds" and they were being treated like children.

76.

After being violently body slammed to the ground, Plaintiff Reuben asked Defendants "why did you body slam me." In response, one Defendant stated, "Boy, shit! You lucky that's all I did."

77.

Several Defendants went upstairs, into the garage, and throughout the house, rummaging and eventually ransacking each area they searched.

78.

Plaintiffs told the defendants that their five-year-old sister was asleep upstairs in their mother's bed.

79.

One of the defendants told Plaintiffs they were going to jail for obstruction because "it's personal now and y'all should not have been recording us."

80.

After approximately an hour and half, Defendants released Plaintiffs without an explanation for why they were handcuffed and detained. No citations were issued to Plaintiffs for any violations of law.

81.

Plaintiffs were able to audio record the entire incident.

82.

The actions of Defendants were in violation of clearly established statutory or constitutional rights about which a reasonable officer should have known.

83.

The actions of Defendants caused Plaintiff Hall to go to DeKalb Medical at Hillandale Hospital for injuries sustained from the assault by Defendants.

84.

A DeKalb County police officer, Officer L. Pham, responded to Plaintiff Hall's emergency call from DeKalb Medical and the incident report charges an Unknown party for Simple Battery-O.C.G.A 16-5-23 of Plaintiff Hall.

85.

Plaintiffs have suffered, and will continue to suffer, significant mental and emotional harm as a result of the conduct of Defendants.

86.

The conduct of Defendants reflects malice towards, and an actual intent to harm, Plaintiffs.

87.

In connection with the state law claims asserted herein, Plaintiffs have provided ante-litem notices to all of the requisite parties involved in this instant action. (See Exhibit A).

88.

As a direct and proximate result of the actions of Defendants, Plaintiffs suffered a violation of their rights under the Fourth Amendment to the United

States Constitution, violations of state law, and sustained the other damages described herein.

## COUNT ONE
## 42 U.S.C. § 1983: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

89.

Plaintiffs reallege and incorporate paragraphs 1 through _88 as though fully set forth herein.

90.

The actions of Defendants in striking Plaintiff Hall in the face with a gun, and then kicking and punching Hall once he was on the ground (where he was not resisting arrest and was not a threat to anyone), and later pointing a taser at Plaintiff Hall's face (and threatening other acts of violence), were an objectively unreasonable use of force against Plaintiff Hall in violation of clearly established rights under the Eighth and Fourteenth Amendments to the United States Constitution.

91.

The actions of Defendants in 'body slamming,' and then placing their bodies atop, Plaintiff Hall once he was on the ground (where he was not resisting arrest and was not a threat to anyone), and later pointing a taser at Plaintiff Reuben's face

(and threatening other acts of violence), were an objectively unreasonable use of force against Plaintiffs in violation of their clearly established rights under the Eighth and Fourteenth Amendments to the United States Constitution.

92.

Defendants maliciously, intentionally and with deliberate indifference deprived Plaintiffs of their rights, privileges and immunities secured by the United States Constitution, specifically, the rights secured by the Fourth and Fourteenth Amendment and its laws under 42 U.S.C. § 1983 to be free from the use of excessive force.

93.

At all times relevant to this action, the law was established with obvious clarity that using force against a citizen without arguable probable cause to believe that the citizen committed or was committing a crime deprives that citizen of his liberty violates the Fourth Amendment to the United States Constitution and the Georgia Constitution (Art. I, § 1, ¶ I).

94.

Of the Defendants who were present and watched as other Defendants used excessive force against Plaintiffs, those defendants had a duty to intervene when these constitutional violations took place in their presence in order to protect Plaintiffs of the unconstitutional acts, but failed to do so. Defendant McGhee,

furthermore, had supervisory authority over all the defendants at the scene, but he failed to prevent their repeated, unlawful use of force. For these reasons, Defendants are directly and personally liable for their nonfeasance under 42 U.S.C. § 1983.

95.

As a result of this excessive use of force, Plaintiffs have suffered emotional, mental and financial injury, entitling them to recover nominal, compensatory and punitive damages against the defendants in an amount to be determined by the enlightened conscience of the jury.

**COUNT TWO**
**O.C.G.A §51-7-20: FALSE IMPRISONMENT**

96.

Plaintiffs reallege and incorporate paragraphs 1 through _95 as though fully set forth herein.

97.

On July 26, 2013, Defendants unlawfully detained Plaintiffs against their will, depriving them of personal liberty.

98.

The detention of Plaintiffs was unlawful because it was not predicated on any process and no exigent circumstances existed to justify Defendants' conduct.

99.

The Defendants are liable for the false imprisonment enacted by other Defendants because they supervised or encouraged the acts of the Defendants who engaged in the false imprisonment.

100.

Under O.C.G.A. § 51-7-22, the Defendants are jointly liable for the false imprisonment of Plaintiffs.

101.

As a result of their unlawful detention, Plaintiffs have suffered emotional, mental and financial injury, entitling them to recover compensatory and punitive damages against Defendants for the loss of their rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

**COUNT THREE**
**ASSAULT AND BATTERY**
**(AGAINST ALL DEFENDANTS)**

102.

Plaintiffs reallege and incorporate paragraphs 1 through 101 as though fully set forth herein.

103.

During the execution of the Ms. Griffin's civil arrest warrant, after obtaining entry into the premises, Plaintiffs were forcibly restrained by some of the Defendants with such unreasonable and excessive force under the circumstances. Because all the Defendants jointly and severally were actively participated in the physical and verbal attacks on Plaintiffs described herein, said Defendants are jointly and severally liable to Plaintiffs for their personal injuries and for medical expenses.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

104.

Plaintiffs reallege and incorporate paragraphs 1 through _103    as    though fully set forth herein.

105.

Defendants' use of excessive force under the circumstances at issue constituted the intentional infliction of emotional distress in violation of the Plaintiffs' Fourth Amendment rights and Georgia law.  All of the Defendants are jointly and severally liable for intentionally inflicting emotional distress upon Plaintiffs when they had no legal authorization to do so.

## COUNT FIVE
## ATTORNEY FEES

### 106.

Plaintiffs reallege and incorporate paragraphs 1 through _105     as     though fully set forth herein.

### 107.

The Plaintiffs seek all applicable attorneys' fees under state and federal law for the vindication of their civil and constitutional rights as guaranteed by the United States Constitution.

### 108.

The Plaintiffs seek all attorneys' fees available to them under 42 U.S.C. § 1988, the United States Constitution and under Georgia law.

## COUNT SIX
## PUNITIVE DAMAGES

### 109.

Plaintiffs reallege and incorporate paragraphs 1 through _108     as     though fully set forth herein.

### 110.

The acts complained of herein were such as to demonstrate an entire want of care and conscious indifference to the consequences and were committed willfully

and wantonly in disregard of the constitutional and civil rights guaranteed by the Fourth Amendment to the United States Constitution. As a result, punitive damages are authorized.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.  they be granted a jury trial as to all issues so triable;

b.  that Plaintiffs recover compensatory damages in an amount sufficient to compensate them for all medical expenses incurred, past present and future, arising from the subject incident;

c.  that the Plaintiffs receive damages for their injuries and emotional pain and suffering, past, present and future;

d.  that the Plaintiffs receive an award for damages recognized by law and recoverable for the violation of their constitutional rights as guaranteed by the Fourth Amendment to the United States Constitution;

e.  that the Plaintiffs recover all reasonable attorneys' fees and costs in connection with the civil claims set forth herein; and

f.  that Plaintiffs receive punitive damages to punish and deter Defendants; and

g.  for such other and further relief as this Court deems just and proper.

This 12th day of February, 2015.


                                        Respectfully submitted,


/s/  Cary S. Wiggins                     /s/ Mawuli M. Davis
CARY S. WIGGINS                          MAWULI M. DAVIS
Georgia Bar No. 757657                   Georgia Bar No.  212029
                                         ROBERT O. BOZEMAN
                                         Georgia Bar No.  073561


**WIGGINS LAW GROUP**                    **DAVIS BOZEMAN LAW FIRM, P.C**
260 PEACHTREE STREET, NW                 4153 B FLAT SHOALS PARKWAY
SUITE 401                                SUITE 204
ATLANTA, GEORGIA 30303                   DECATUR, GEORGIA 30034
Telephone:  (404) 659-2880               Telephone: (404) 244-2004
Facsimile:  (404) 659-3272               Facsimile:  (404) 244-2020
cary@wigginslawgroup.com                 mdavis@davisbozemanlaw.com
                                         rbozeman@davisbozemanlaw.com